UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
K'HAL BNEI TORAH OF MOUNT IVY,

     Plaintiff,

  -against-             COMPLAINT

TOWN OF HAVERSTRAW, PLANNING BOARD OF
THE TOWN OF HAVERSTRAW, and GLENN WIDMER,
JOSEPH MICHALAK, and ROBERT SAMBRATO each
individually, and as Members of the PLANNING BOARD OF
THE TOWN OF HAVERSTRAW

     Defendants.
-------------------------------------------------------------------------X

   Plaintiff, K'HAL BNEI TORAH OF MOUNT IVY ("Plaintiff" or "Congregation"), by

and through its attorneys, Emanuel Law P.C., as and for its Complaint in this matter respectfully

alleges as follows:

## I. PRELIMINARY STATEMENT

1.  This case arises from the unlawful actions of Defendants and, in particular, three individual

members of the Town of Haverstraw Planning Board - Glenn Widmer, Joseph Michalak and Robert

Sambrato - who succumbed to toxic anti-Semitic rhetoric from an angry group of their neighbors in

response to Plaintiff's efforts to establish a house of worship in the Town of Haverstraw.

2.  In doing so, Defendants denied Plaintiff the right the freely exercise its religion, and that of

its congregants, in violation of New York State case law, federal statutory law, and the federal and

New York State constitutions. They also acted in a manner directly contrary to the record before

them, including their previous grant of a negative declaration under SEQRA and a unanimous grant

of variances from the Town of Haverstraw Zoning Board of Appeals.

3.      Rather than upholding their statutory and constitutional responsibilities, Defendants acted arbitrarily and capriciously, and violated Plaintiff's rights under, *inter alia*, the Religious Land Use and Institutionalized Persons Act of 2000 (42 U.S.C. §2000-cc-2(a), 2(b)(2), 2(b)(3)(B) and the U.S. Constitution, First and Fourteenth Amendments, 42 U.S.C. §1983.

4.      In doing so, the Defendants have caused the Plaintiff to suffer, and continue to suffer,  harm, damage and injury and to be subjected to public ridicule and denied its First Amendment rights.  The Plaintiff will continue to suffer such damages unless the Defendants' acts and conduct complained of are permanently enjoined.

II. PARTIES

5.      Plaintiff K'hal Bnei Torah of Mount Ivy (the "Congregation" or "Plaintiff") is a religious corporation organized under Article 10 of the New York Religious Corporation Law serving the Orthodox Jewish community in the Thiells/Mt.Ivy section of the Town of Haverstraw. It is the applicant before the land use boards of the Town of Haverstraw seeking approval to use premises known as 62 Riverglen Drive, Thiells, New York (the "Property") as a house of worship.

6.      Defendant Town of Haverstraw ("Town") is a municipal subdivision of the State of New York which has exercised its authority to approve site plans within the Town and delegated that authority to its planning board.

7.      Defendant Planning Board of the Town of Haverstraw (the "Planning Board" or "Board"), composed of Salvatore Corallo, Chairman ("Corallo"), along with member Anthony Gizzi ("Gizzi"), and Defendants/members Glenn Widmer ("Widmer"), Joseph Michalak ("Michalak"), and Robert Sambrato ("Sambrato"),  is the duly constituted planning board and instrumentality of the Town, which is authorized and empowered to approve site plans.

### III. JURISDICTION AND VENUE

8.      This Court has jurisdiction pursuant to 28 U.S.C. §1331, 1343, 1367 and 42 U.S.C. §

1983 and 1988.

9.      Venue in the Southern District of New York is based upon 28 U.S.C. §1391(b), as all

defendants reside in and the events or omissions giving rise to this action occurred in the district.

### IV. STATEMENT OF CLAIM

10.     In or about January 2021, the Congregation submitted an application to the Town of

Haverstraw Planning Board for site plan approval and approval to convert and expand an existing

single family residence into a house of worship - an allowable use as of right in the applicable

R-25 zoning district, subject to site plan approval.  In order to facilitate the transformation of the

home into a house of worship, Plaintiff was required to add additional parking, retaining walls

and related improvements (the "Proposed Project").  A copy of the narrative summary submitted

on behalf of the Congregation, which describes the Proposed Project more fully, is annexed

hereto as **Exhibit "1"**.

11.     The Congregation submitted a full set of plans in connection with this application,

including engineering site plans and interior architectural layout plans.

12.      The Property is shown as Lot 11 on the Carlton Hills subdivision plat, which is a 62-lot

subdivision encompassing approximately 43 acres and section 1 of the Carlton Hills subdivision

plat, of which the Property is a part, was filed with the Rockland County Clerk on May 27, 1983

as Map No. 5493.

13.     There is a 100-foot wide buffer around the perimeter of the subdivision that is identified

on the plat as a "conservation easement".

14.     The Property was a corner lot of the Carlton Hills subdivision. The filed plat indicates that it is burdened with this 100-foot buffer on both the west and south sides of the Property.

15.     According to a letter from the Town's Building Inspector dated March 18, 2021 and prepared in connection with the matter at bar, this area, identified on the plat as a "conservation easement", was never accepted by the Town or recorded as a separate document with the County Clerk or the New York State Department of Environmental Conservation ("DEC"), and the DEC has advised it has no record of, nor  does it regulate, this area on the Applicant's Property. A copy of the Building Inspector's letter is annexed hereto as **Exhibit "2"**.

16.      Pursuant to section 49-0305.1 of the New York Environmental Conservation Law, "A conservation easement may be created or conveyed only by an instrument which complies with the requirements of section 5-703 of the general obligations law and which is subscribed by the grantee."

17.     The Town has therefore treated this area as a local zoning restriction, like other setback and bulk requirements, and the Town Code authorizes the Planning Board to approve functions in areas designated as a conservation easement. (Haverstraw Zoning Code sec. 167-3 "Definitions": "CONSERVATION EASEMENT - An undeveloped area used to protect, improve or enhance lands due to special environmental or other conditions. Only those functions specifically approved by the Planning Board may be performed within the easement. Once the easement has been dedicated to the Town, no activity may be conducted within the easement, by any party, without the express written approval of the Building Inspector.")

18.     The Planning Board held a preliminary presentation on this application at its August 11, 2021 meeting and opened a duly-noticed public hearing at its November 10, 2021 meeting, which

public hearing was continued at its January 12, 2022 meeting, February 9, 2022 meeting, March 9, 2022 meeting, April 13, 2022 meeting, May 11, 2022 meeting, June 8, 2022 meeting and July 13, 2022 meeting, and members of the public having ample opportunity to attend and be heard, the public hearing was closed on July 13, 2022.

19.     The Town also retained a traffic engineering consultant, Stonefield Engineering & Design, to review the proposed plan and use and to suggest certain on-street traffic, parking and signage mitigation measures so that on-street parking occurs in a safe manner such that there is sufficient room for passenger and emergency vehicle circulation and access ("Stonefield Plan"), which plan is attached hereto as **Exhibit "3"**.

20.     The Planning Board served as lead agency for a coordinated review pursuant to the New York State Environmental Quality Review Act ("SEQRA"), and at its June 8, 2022 meeting adopted a Negative Declaration thus ending the SEQRA process, which Negative Declaration is attached hereto as **Exhibit "4"**.

21.     The Planning Board made the following specific findings with respect to the conservation easement: 1) the area identified as a conservation easement was never accepted by the Town and recorded as such and therefore was not regulated by the NYS Department of Environmental Conservation; 2)  Property was the only property in the subdivision burdened by a conservation easement on two sides of its property; 3) the Town worked closely with the Plaintiff to limit incursion into the western conservation easement such that the only activity would be the installation of a retaining wall to construct the necessary parking; 4) that the conservation area along the southern property line no longer served its intended function, and that the construction of the parking spaces

in this area (which were required by Town Code) was a better alternative to overburdening the on-street parking.

22.     The application was then referred to the Zoning Board of Appeals for necessary variances.

23.     At its July 13, 2022 meeting, the Town of Haverstraw Zoning Board of Appeals ("ZBA") unanimously adopted a resolution granting all necessary area variances, including four area variances that were related to existing conditions on the Property (that would exist regardless of whether the Property continued to be used for residential purposes or the Property is converted to a house of worship) and three area variances related to the proposed use of the Property as a house of worship.

24.     After the ZBA granted the necessary variances, and after the Stonefield Plan was presented to the Planning Board, the Board's attorney drafted a proposed resolution granting final site plan approval to the project. A copy of the proposed resolution is attached hereto as **Exhibit"5"**.

25.     In the proposed resolution, the Board's attorney correctly cited provisions of federal and New York State law that had been discussed during the Board's deliberations and at the various public hearing sessions:

> The federal Religious Land Use and Institutionalized Persons Act ("RLUIPA") "is the latest in long-running congressional efforts to accord religious exercise heightened protection from government imposed burden, consistent with Supreme Court precedent."
>
> RLUIPA "prohibits a governmental entity from applying a land use regulation 'in a manner that imposes a substantial burden on the religious exercise of a person or institution," and when the religious use "has no ready alternatives, or where the alternatives require substantial 'delay, uncertainty, and expense,'" a denial of the land use application could demonstrate a substantial burden on religious exercise.
> Federal "courts have held zoning ordinances, or zoning decisions, that significantly lessen the prospect of a religious institution being able to use the property to further its religious mission contravene RLUIPA."

6

If this application was subject to RLUIPA litigation, RLUIPA's "remedial purpose and effect" to alleviate any substantial burden on the Applicant's religious exercise could result in significant monetary penalties to the Town (which would be the burden of the taxpayers) as well as a more impactful project, and in this circumstance a federal court has held that "[a]ny purported 'burden' on the [municipality] and its residents is an inevitable consequence of resolving RLUIPA litigation, which Congress anticipated when drafting the statute and requiring its remedial construction," and in holding such the Court rejected the allegations of "reverse discrimination" under, or "weaponization" of, RLUIPA.

In addition, under longstanding State law, educational and religious uses "have enjoyed special treatment with respect to residential zoning ordinances and have been permitted to expand into neighborhoods where nonconforming uses would otherwise not have been allowed" and "greater flexibility is required in evaluating an application for a religious use than an application for another use and every effort to accommodate the religious use must be made."

Local zoning also cannot require a showing "that no ill effects will result from the proposed use" as this "is improper because it fails to recognize that educational and religious uses ordinarily have inherent beneficial effects."

"The presumptive value of religious facilities must be balanced against any actual detriment to the public health, safety or welfare, bearing in mind that typical hazards of traffic congestion, noise, diminution in property values, and the like, are generally insufficient to outweigh the public benefit of religious institutions and the constitutional protections to which such organizations are entitled," and "where an irreconcilable conflict exists between the right to erect a religious structure and the potential hazards of traffic or diminution in value, the latter must yield to the former." [footnotes omitted].

A copy of the draft resolution is annexed hereto as **Exhibit "6"**. The footnotes omitted above are included in said copy

26.     Thus, the Board and its members were fully aware of the requirements of federal and State law with respect to land use decisions affecting religious uses.

27.     The public hearings before both the Planning Board and the ZBA were extremely well-attended. At most of the public hearings, the local police were present to keep order.

28.     Opposition to the influx of Orthodox Jews into Haverstraw permeated and overshadowed all

discussions at the public hearing sessions. One outburst at an early session from a member of the

public was so disgraceful that it made international news, and drew condemnation from New York

Governor Kathy Hochul, among other elected officials:

> MR. COLELLA: Who will respond to emergencies now because all I see now is a
> black Explorer show up that's allegedly Hatzolah [a private EMT and ambulance
> agency primarily serving the Orthodox Jewish community], but the local P.D. doesn't
> respond because they have no idea of drownings or ·emergencies or fires happening
> in the facility there, right, within Riverglen Mountain there or should I say Carlton
> Hills because that's what it's actually called, right?
> Even though there's sidewalks in the neighborhood, right, a certain sect of people
> tend to walk in the street and nobody is wearing any reflective gear. So, if I run one
> of them over and, of course, I'm gonna back·over 'em again, right?
> (Transcript, Planning Board meeting of November 10, 2021, p 47, lines 5-19);

See, article "Police weigh hate crime charges in wake of antisemitic comments at Haverstraw

meeting", Journal News, Nov. 11, 2021, attached as **Exhibit "7"**. These comments were met with

applause and encouraging shouts and laughter from members of the audience.

29.     Subsequent opposition on purely religious grounds continued, and contained "dog whistles".

Neighborhood opponents complained about the change in their neighborhood, that real estate brokers

had inquired as to whether they wanted to sell, and made continuous references to "they" and "them".

Neighbors also pointed, with obvious distaste, to the adjoining Town of Ramapo, which has a large

Orthodox Jewish population.

30.     Among the most prominent complaints from opponents was that the proposed synagogue

would negatively affect the neighborhood. In that regard they complained of narrow streets in the

neighborhood (even though the streets are similar to most other streets in the Town). They

complained of increased pedestrian traffic (noting that Orthodox Jews are not permitted to drive on

8

the Sabbath and many religious holidays). They complained about the size of the parking lot on the site (which was required by the Town Zoning Code, and which was reduced in size by a variance granted by the ZBA).

31.    Most prominently, the opponents wanted to know why the synagogue was proposed for the Property, and not in some commercial area. In other words, in someone else's backyard.

32.    No substantive information was ever presented by project opponents, despite numerous opportunities. The only submissions made by opponents were attorneys' letters that evidenced a lack of knowledge of the facts and of applicable law, including basic ignorance of the fact that the proposed use was a use as of right. It was truly the textbook definition of "generalized community opposition."

33.    The Congregation, for its part, testified that most of its members lived within a one-half mile radius of the Property. This proximity is needed because members cannot drive to pray on the Sabbath and many other religious holidays, and the Property met the basic one-acre minimum lot size for houses of worship required by the Zoning Code.

34.    The Congregation also noted that it had significantly reduced the size of the synagogue from its original proposal. It had gone from 200 seats to 119 seats and finally to 107 seats; all in response to concerns raised by the Board and the Town's consultants in planning sessions.

35.    As set forth above, the Planning Board, as lead agency under SEQRA, granted the project a negative declaration at its June 8, 2022 meeting. A negative declaration is "a written determination by a lead agency that the implementation of the action as proposed will not result in any significant adverse environmental impacts." 6 N.Y.C.R.R. § 617.2(z).

36.     The resolution granting the negative declaration was approved by a vote of 4-1, with Corallo, Gizzi, Michalak, and Sambrato in favor, and Widmer opposed. Sambrato had made the motion, with Corallo seconding it.

37.     The granting of the negative declaration allowed the ZBA to act. The ZBA unanimously approved the necessary variances at its July 13, 2022, meeting.

38.     On that same date (July 13), the Planning Board closed the public hearing on the project and reserved decision.

39.     At its meeting of August 17, 2022, the Planning Board took up the draft resolution that had been prepared by its attorney and posted on the Town's website (Exhibit 6, above). There was no discussion of the draft resolution at that meeting.

40.     A motion was made by Sambrato and seconded by Gizzi to adopt the draft resolution, which had been read aloud in its entirety. Corallo and Gizzi voted in favor. Widmer voted against the motion. Michalak and Sambrato, despite having previously voted to grant the negative declaration, and despite Sambrato having made the motion, also voted against the motion to approve. Thus, the motion to approve the project failed by a vote of 2-3. The Board's meeting was thereafter adjourned without further action. Attached as **Exhibit "8"** is the certified transcript of the meeting of August 10, 2022.

41.     Under New York Town Law § 271.16, "Every motion or resolution of a planning board shall require for its adoption the affirmative vote of a majority of all the members of the planning board." Since the resolution to approve did not receive "the affirmative vote of a majority of all the members" of the Board, the resolution failed, and the Board is therefore deemed to have taken no action on the site plan.

42.     Pursuant to New York Town Law § 274-a.8, the Planning Board "shall make a decision on the application [for site plan approval] within sixty-two days after" the close of the public hearing. The public hearing was closed on July 13, 2022. Therefore, a decision was to have been made no later than September 13, 2022.

43.     The Planning Board met on August 10, 2022, and, as set forth above, did not make a decision by the affirmative vote of a majority of its members. The Planning Board next met on September 13, 2022. Again, it took no action at that meeting.

44.     Defendant Planning Board has failed to meet its statutory duty to "make a decision" on Plaintiff's application for site plan approval in a timely manner.

45.     A majority of the Planning Board, namely Widmer, Michalak, and Sambrato, by voting against approval of the application, clearly evidenced their intent to deny Plaintiff's application for site plan approval for a house of worship at the Property.

46.     This intent to deny the application is contrary to the facts adduced in the record. In particular, it is contrary to the negative declaration that was granted (which Michalak moved and for which Michalak and Sambrato voted in favor), and contrary to the unanimously approved variances that were granted by the ZBA.

47.     According to the SEQRA Handbook, a publication of the New York State Department of Environmental Conservation providing official guidance with respect to the substance and procedure of SEQRA,

> As permitting standards can overlap with SEQR concerns, denial [of an application that is otherwise] supported by a negative declaration can appear inconsistent. The basis for the agency's denial must be on the failure of the project or action to meet

permitting or approval standards that are distinct from SEQR and should not be inconsistent with the analysis and conclusions of the negative declaration.

SEQRA Handbook, 4th Ed., Ch. 4, § D.8.

48.     Neither the Planning Board, nor Michalak or Sambrato, who both voted in favor of the negative declaration, stated a basis for denying the application after having first granted the negative declaration, even though Sambrato is an attorney at law duly admitted in New York and would thus have been well aware of applicable laws and the consequences of his actions.

49.     In addition, upon information and belief, at all times relevant Michalak and Widmer resided less than one half mile from the property, respectively at 39 Poplar Rd. and 5 Lea Court in Garnerville, well within what would be considered the "neighborhood," and as such both these Planning Board members were well aware of the significant opposition to the project voiced by their immediate neighbors.

50.     By failing to vote on the application, the Defendants have arbitrarily and capriciously left the Plaintiff in limbo, effectively bringing the Proposed Project to a grinding halt and preventing Plaintiff from exercising its right to the free exercise of religion.

51.     This intent to deny the application is also contrary to federal and State law regarding land use decisions involving religious institutions, as enunciated in the draft resolution which the Planning Board failed to adopt.

52.     This intent to deny the application is arbitrary and capricious, and motivated by a desire to accommodate generalized community opposition.

53.     Remanding this matter to the Planning Board with a direction to vote will only result in a decision to deny the application. Such a decision will be contrary to the law and the record.

## AS AND FOR A FIRST CAUSE OF ACTION
### US Constitution, Fourteenth Amendment
### (42 U.S.C. §§1983, 1985)

54.    Plaintiff repeats and realleges all the allegations contained in paragraphs 1 through 53 hereof.

55.    Under 42 U.S.C. §1983, "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State, or Territory or the District of Columbia, subjects or causes to be subjected and citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunity secured by the Constitution and laws shall be liable to the party in an action at law, suit in equity or other proper proceeding for redress."

56.    The First and Fourteenth Amendments to the United States Constitution prohibits the Defendants from depriving Plaintiff of its right to freely exercise its religion, from doing so without due process of law, and from denying Plaintiff the equal protection of the laws.

57.    The Orthodox Jewish religion requires the observance of the Sabbath, or Shabbat. The holy day begins on Friday at sunset and lasts until Saturday at sunset. Shabbat, stemming from the Hebrew word for rest, requires that Jews not work or drive, and turn from worldly matters.

58.    The religious prohibition against driving therefore requires Orthodox Jews to establish houses of worship within reasonable walking distances of their homes. The houses of worship must also be located so that there is safe pedestrian access to them.

59.    The use of the Property as a house of worship is a use permitted as of right in the zone in which the Property is located. In fact, houses of worship "are permitted, as of right in every zoning district of the Town of Haverstraw" (Haverstraw Zoning Code § 167-58.A).

60.     There is no compelling governmental interest justifying the denial of an application to use the Property as a house of worship.

61.     The Planning Board and its members, acting under color of law, and as an instrumentality of the Town, deprived and conspired to deprive Plaintiff of its right to freely exercise its religion, deprived and conspired to deprive it of the equal protection of the law with regard to its civil right to practice its religious freedom, all without due process of law, because of their refusal and failure to grant Plaintiff's application to operate a house of worship.

62.     The Defendants have acted under color of law and deliberately used their position(s) to interfere and impede the Plaintiff's right to exercise its freedom of religion.

63.     Defendants' have displayed deliberate indifference to Plaintiff's constitutional rights, the deprivation of which was a consequence of Defendants' conduct.

64.     As a result of Defendants' wrongful conduct and actions, they injured Plaintiff by depriving it of its rights.

65.     Plaintiff has no adequate remedy at law for the harm and damage caused by Defendants violations of its constitutional rights.

66.     Defendants have caused Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury all of which will continue unless Defendants' acts and conduct complained of are permanently enjoined.

## AS AND FOR A SECOND CAUSE OF ACTION
### "Non-Discrimination," "Equal Terms," "Substantial Burden," "Exclusions & Limits"
### (Religious Land Use and Institutionalized Persons Act of 2000
### 42 U.S.C. §2000-cc-2(a), (b)(1), (b)(2), & (b)(3))

67.     Plaintiff repeats and realleges all of the allegations set forth in paragraph 1 through 66 hereof as if fully set forth at length herein.

68.     The Orthodox Jewish religion requires places of worship within walking distance of practitioners' homes.

69.     The conversion of a single-family home into a neighborhood house of worship constitutes protected religious exercise within the meaning of RLUIPA.

70.     A house of worship is a permitted use in the zone in which the Property is located.

71.     There is no compelling government interest justifying the denial of the Plaintiff's application to convert the home into a house of worship.

72.     Defendants' refusal to grant the application in light of the public's clear and obvious anti-Semitic protests, despite its previous findings with respect to SEQRA and its knowledge of the state and federal statutes regarding religious discrimination, can only be perceived as having a been a capitulation to the discriminatory animus clearly voiced by the "generalized public opposition" to the project.

73.     Plaintiffs have no adequate remedy at law for the harm or damage caused by the Defendants' violation of their constitutional rights.

74.     Defendants have caused Plaintiff to suffer, and to continue to suffer, irreparable harm, damage and injury.  Plaintiff will continue to suffer damages unless Defendants' acts and conduct complained of are permanently enjoined.

## AS AND FOR A THIRD CAUSE OF ACTION
### New York State Constitution
### ("Article I §§ 3, 6, 9, & 11")

75.     Plaintiff repeats and realleges all the allegations contained in paragraphs 1 through 74 hereof as if fully set forth at length herein..

76.     All the Defendants, by their acts, have acted under color of law and have conspired and continue to conspire, in breach of Plaintiff's rights to protect its interests under the law in violation of Article I §3 (free exercise of religion), Article I, §6 (due process), Article I, §9 and Article I §11 (equal protection, discrimination in civil rights) of the New York State Constitution.

77.     Consideration of an application for site plan approval is a power given exclusively to the Town by New York Town Law § 274-a. Such power was delegated to the Planning Board by Town of Haverstraw Code § A173-2.A ("The authority for the approval of site plans required in this chapter, including amendments and modifications, is hereby delegated by the Town Board to the Planning Board of the Town of Haverstraw.")

78.     Defendants, and each of them, under color of law, have deprived Plaintiff of its civil right to practice its religious because of the failure of the Planning Board to make a timely decision to grant its application and by failing to grant its application, by discriminating against and targeting Plaintiffs and by treating Jewish houses of worship on less equal terms as non-religious assemblies and institutions.

79.     Defendants' actions and inactions have deprived and continue to deprive the Plaintiffs of their right to freedom of association and freedom of religious expression, as secured by the First Amendment and made applicable to the States by the Fourteenth Amendment.

16

80.     The due process clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law."

81.     Defendants' failure to vote on Plaintiff's application deprived Plaintiffs due process of law.

82.     These civil rights are granted to Plaintiff under the First and Fourteenth Amendments to the United States Constitution, Article I of the New York State Constitution, the federal Religious Land Use and Institutionalized Persons Act of 2000 (42 USC §§ 2000cc, et seq.), and New York State case law.

83.     Plaintiff has no adequate remedy at law for the harm or damage caused by the Defendant's violation of their constitutional rights.

84.     Defendants have caused Plaintiff to suffer, and to continue to suffer, irreparable harm, damage and injury.  Plaintiff will continue to suffer damages unless Defendants' acts and conduct complained of are permanently enjoined.

        WHEREFORE, Plaintiff respectfully demands that the Court issue an order and judgment:

1.     Holding that the Planning Board and its members, as  instrumentalities of the Town, acting under color of law, have deprived Plaintiff of its civil right to practice its religion because of the failure of the Planning Board to make a timely decision to grant its application and by failing to grant its application; and

2.     Holding that Widmer, Michalak, and Sambrato, acting under color of law, deprived Plaintiff of its civil right to practice its religion because of the failure of the Planning Board to make a timely decision to grant its application and by failing to grant its application; and

3.     Ordering Defendants to approve the resolution pertaining to Plaintiff's site plan application on the same terms, and on the same basis, as was set forth in the draft resolution.

4.      Entering judgment against each of the Town, Planning Board, Widmer, Michalak, and Sambrato in the sum of Three Million Dollars as compensatory damages; and

5.      Entering judgment against each of Widmer, Michalak, and Sambrato in the sum of One Million Dollars as punitive damages; and

6.      Entering judgment against Defendants granting an award of costs and disbursements, including a reasonable award for  attorneys' fees pursuant to 42 U.S.C. §1988; and

7.      Entering an Order granting to Plaintiff an award of damages, both compensatory and punitive damages against Defendants in an amount to be determined at trial for the loss of its rights under the First and Fourteenth Amendment to the United States Constitution;

8.      Enjoining Defendants from continuing to violate Plaintiff's religious and civil rights,

9.      Granting such other and further relief as may appear just and proper.

Dated: November 10, 2022
         New City, New York


Respectfully submitted,

_____                      JUNGE & MELE, LLP
Ira M. Emanuel IE0003
Amy Mele, 2661296                             s/Armand P. Mele
EMANUEL LAW P.C.
4 Laurel Road                                 _____
New City, New York 10956                      Armand P. Mele, #2442374
845-634-4141                                  303 South Broadway, Suite 470
ira@emanuellaw.com                            Tarrytown, New York 10591
amy@amymelelaw.com                            Tel.: (212) 269-0061

                                              Of counsel

Attorneys for Plaintiff


18