

**EMANUEL LAW P.C.**

Ira M. Emanuel, Esq. | Amy Mele, Esq. *Of Counsel*
*Counsel to* Freeman & Loftus, RLLP

Four Laurel Road
New City, NY 10956

Info@EmanuelLaw.com

www.EmanuelLaw.com

Tel: 845-634-4141

PLANNING BOARD
TOWN OF HAVERSTRAW

NARRATIVE SUMMARY

BNEI TORAH
62 Riverglen Drive, Thiells
Tax Lot 25.12-1-31

This is an application to convert an existing single-family house to a "house of worship" as that term is used in the Haverstraw Zoning Code. The property is located at 62 Riverglen Drive, in the Thiells section of the Town. It is in an R-25 zoning district, which allows this use by right, pursuant to § 167-58.A of the Zoning Code.

As a religious use, the proposal is protected by New York State case law and by federal statute.

### *Existing Conditions*

The property is located on the west side of Riverglen Drive, approximately 100 feet north of the intersection with Dunnigan Drive. The parcel was created as part of the subdivision plat for "Subdivision of Property for Carlton Hills — Section 1", filed on May 27, 1983. The property is in the R-25 zoning district and contains an existing single family home. The single family home meets the required bulk criteria and there are no variances for the existing structure. This site was selected because it meets the basic zoning requirements for a house of worship.

There is a 100 foot conservation easement located along the west (rear) and south (side) property lines. The conservation is shown on the filed subdivision map with no description for the requirements of the conservation easement. There is no other instrument recorded or filed in the Rockland County Clerk's Office relating to the conservation easement. The existing home has a side entry garage with a driveway that encroaches in the conservation easement.

The land slopes downhill to the west; there are areas of designated steep slopes located in the rear of the property. As a result of required deductions for steep slopes, the property has a net lot area of 1.00 acres.

EXHIBIT 1

Bnei Torah, 62 Riverglen Dr, Thiells     Page 2

### Background and Prior Iterations

The applicant/owner, K'hal Bnei Torah of Mount Ivy (the "Congregation"), is a religious corporation providing worship and spiritual services to members of the Orthodox Jewish religion. The Congregation was first organized in 2017.

The Congregation now has approximately 60 families as members, and has outgrown its current quarters.

In 2019, the Congregation purchased the subject site at 62 Riverglen Drive, which it intends to convert into a synagogue (house of worship).

Pursuant to section 167-58.A of the Zoning Code, "Houses of worship, such as churches synagogues, mosques and other similar uses, are permitted as of right in every zoning district in the Town of Haverstraw."

In addition, "Schools, meeting halls and community centers which conduct activities accessory to houses of worship are permitted on any lot containing a house of worship, as an accessory use in every zoning district in the Town of Haverstraw." (Zoning Code, § 167-58.B.)

The project appeared before TAC on January 28, 2021, March 25, 2021, June 24, 2001, and August 4, 2021.

Initially, the Congregation proposed a house of worship for up to 200 congregants. This included building a 63' x 40' (2,512sf) two-story addition to the existing structure. A parking area for 22 cars was proposed for the south side of the building, with the driveway snaking in front of the existing building. Retaining walls were proposed to accommodate the new proposed grading for the parking area.

Concerns raised by TAC relating to the number of available parking spaces and the impact on the conservation area resulted in capacity reductions – first to 119 congregants and finally to 107 congregants. The size of the two-story addition was reduced to 57'10" x 40' (2,313sf).[1] The floor area ratio was thus reduced from 0.20 to 0.188.

The driveway was straightened to reduce its length, and the parking area was moved eastward to reduce the intrusion into the western conservation easement. The parking area now has 27 spaces.

### Proposal

The current proposal is for a house of worship with a seating capacity of 107 congregants for worship services, together with typical accessory spaces for a study

---

[1] The total floor area of the original concept was 5,024sf; that for the current proposal is 4,626sf.

room, gathering room for after-worship socializing, warming kitchen, rabbi's study/office, coatrooms, and bathrooms.

The existing house will be expanded to the rear with a 57'-10" x 40' two-story addition. The sanctuary will be on the grade level and have a high ceiling, with the gathering room and warming kitchen on the lower level. The existing structure will contain an entrance lobby, coatrooms, toilets, and the rabbi's study on the grade level, with the women's seating section, a study room, coat room, and toilets on the upper level.

The interior layout is typical of synagogues of the Orthodox Jewish faith. Men and women sit in separate sections. Here, the men sit in the main part of the sanctuary, with the women in a balcony overlooking the sanctuary. The altar, or *bima,* is at the front of the sanctuary, in front of the ark which contains the Torah. Congregants, both men and women, are seated at tables facing the *bima.* Tables are needed because the books used in worship are too large to hold. Because of the chair and table arrangement, more floor space is needed than if congregants were seated in pews or in chairs without tables.

The gathering room on the lower level is to be used primarily for after-worship socializing. Orthodox Jewish worship services usually last for two hours on Saturday mornings, and most of the day during important religious holidays. It is the custom among Jewish congregations to gather for a snack or a small meal after worship. Thus, the users of the gathering room will be the same persons who attended worship immediately prior. The gathering room may also be used for meetings or small events that would be inappropriate for the sanctuary.

Working with the Town's consultants, the parking area has been increased to 27 spaces and will be located to the south (left) of the building. It has been moved closer to the front of the lot in order to reduce its impact on the western conservation easement and to reduce the amount of regrading needed. Similarly, the storm water management system has been moved further uphill, beneath the proposed parking area. This will allow the system to be placed above natural soil, as opposed to compacted fill. As is currently the case with the existing driveway, the parking area will be located within the southern conservation easement.

The synagogue will serve as a place of worship for daily prayer as well as religious study and lectures. It intends to operate on the following schedule, which is subject to change as the needs of the synagogue evolve. Attendance at Sabbath and holiday services is usually greater than attendance at weekday services.

Weekday schedule - Sunday through Friday:

Morning prayers are held at 6:30 and 7:10am (30 min duration each)

Night prayers: 8:30 and 10 PM (15 minute duration)

Bnei Torah, 62 Riverglen Dr, Thiells        Page 4

Study and lectures between 8PM and 10:30PM - scattered - averaging 10 to 25 people at a time on the property

Sabbath/Saturday schedule:

Friday night service begins 20 minutes before sundown with 1 hour total duration.

Sabbath/Saturday morning prayers are at 8:30 (2 hour duration)

Sabbath/Saturday evening prayers: 1 hour before sundown (30 min duration)

Sabbath/Saturday night prayers: at nightfall (15 min duration).

Religious Holiday schedule:

Same as Sabbath/Saturday schedule.

There will be no driving during the holidays or sabbath.[2] The sabbath and Jewish religious holidays begin and end at sundown. Those who live close by will walk to and from services. Those who live farther away will drive to the synagogue just before the evening service and leave their cars in the parking lot until they are permitted to drive again under religious law (the following sundown for sabbath, one or two evenings later for holidays).

The synagogue will also be used for occasional community events such as birth celebrations, bar and bat mitzvot, etc. There will be no on-site catering kitchen, although there will be a warming kitchen.

There are no plans for a religious school, other than the occasional evening study sessions listed above.

The above hours are anticipated for normal operations of the proposed synagogue based on religious worship obligations. They are subject to change based upon currently unforeseeable needs.

### *The Conservation Easement*

A conservation easement is shown on the subdivision plat of Carlton Hills, Section 1, that created the subject parcel and other nearby parcels. The easement is 100 feet in depth, and appears to have been created to protect the adjacent Town parkland to the West.

As noted in the Building Inspector's letter dated March 18, 2021, no deed for the conservation easement was ever recorded in the Rockland County Clerk's Office, nor has a deed for the conservation easement been located in the Town's records. The only other reference to the conservation easement is in an offer of dedication given to the Town, but that offer refers to "all the streets, easements, parks and required utilities

---

[2] Sabbath begins at sundown Friday and continues until sundown Saturday.

shown on the within subdivision plat and construction plans." There is no specific reference to the conservation easement. Additionally, the Building Inspector reported, there is no record of the Town's acceptance of the conservation easement.

Thus, no document indicates the nature of this conservation easement or governs what can and cannot be done within the easement.

The Building Inspector goes on to opine that, since the conservation easement was imposed as a requirement of subdivision approval, it is governed by the Zoning Code.

Section 167-3 defines "conservation easement":

> **CONSERVATION EASEMENT**
>
> An undeveloped area used to protect, improve or enhance lands due to special environmental or other conditions. Only those functions specifically approved by the Planning Board may be performed within the easement. Once the easement has been dedicated to the Town, no activity may be conducted within the easement, by any party, without the express written approval of the Building Inspector.
>
> [Added 6-24-2002 by L.L. No. 7-2002]

Based on this definition, the Building Inspector states that the Planning Board may determine the extent of activities and disturbance to be permitted with the subject conservation easement.

### *Religious Land Use Law*

The proposed use is a house of worship, specifically, a synagogue for worship in the Orthodox Jewish faith. Such a use is permitted as of right in all zoning districts of the Town of Haverstraw.

Religious uses are granted protection under federal law, and special status under New York law. New York courts have long held that all schools and religious institutions are beneficial to the public welfare, and, to the extent that zoning laws are valid only if they are reasonably related to the public health, safety, morals or welfare, restrictions on schools and religious institutions are difficult to support.[3]

The New York Court of Appeals has held:

> The presumptive value of religious facilities must be balanced against any actual detriment to the public health, safety or welfare, bearing in mind that typical hazards of traffic congestion, noise, diminution in

---

[3] 1 New York Zoning Law and Practice, § 11.08; *see, Concordia Collegiate Institute v. Miller*, 301 N.Y.189 (1950); *New York Institute of Technology, Inc. v. Ruckgaber*, 65 Misc.2d 241, 317 N.Y.S.2d 89 (Sup. Ct. 1970).

property values, and the like, are generally insufficient to outweigh the public benefit of religious institutions and the constitutional protection to which such organizations are entitled.[4]

In that same case, the Court of Appeals went on to say, "where an irreconcilable conflict exists between the right to erect a religious structure and the potential hazards of traffic or diminution in value, the latter must yield to the former."[5]

Under both New York and federal law, it is the obligation of the municipality to remove substantial burdens upon the exercise of religion.[6]

The applicant's need to intrude into the conservation easement is the direct result of the Zoning Code's requirement to provide on-site parking. Under New York law,

> "[W]hile religious institutions are not exempt from local zoning laws, greater flexibility is required in evaluating an application for a religious use than an application for another use and every effort to accommodate the religious use must be made" (Matter of Genesis Assembly of God v. Davies, 208 A.D.2d 627, 628, 617 N.Y.S.2d 202; see Matter of Tabernacle of Victory Pentecostal Church v. Weiss, 101 A.D.3d 738, 740, 955 N.Y.S.2d 180; Matter of Capriola v. Wright, 73 A.D.3d 1043 1045, 900 N.Y.S.2d 754; Matter of St. Thomas Malankara Orthodox Church, Inc., Long Is. v. Board of Appeals, Town of Hempstead, 23 A.D.3d 666, 804 N.Y.S.2d 801). *A local zoning board is required to "suggest measures to accommodate the proposed religious use while mitigating the adverse effects on the surrounding community to the greatest extent possible"* (Matter of Genesis Assembly of God v. Davies, 208 A.D.2d at 628, 617 N.Y.S.2d 202; see Matter of Tabernacle of Victory Pentecostal Church v. Weiss, 101 A.D.3d at 740, 955 N.Y.S.2d 180; Matter of Capriola v. Wright, 73 A.D.3d at 1045, 900 N.Y.S.2d 754; Matter of St. Thomas Malankara Orthodox Church, Inc., Long Is. v. Board of Appeals, Town of Hempstead, 23 A.D.3d at 667, 804 N.Y.S.2d 801)[emphasis supplied].[7]

Federal law imposes a similar obligation on the municipality to find the "least restrictive means for furthering [a] compelling interest" of the municipality.[8]

---

[4] *Matter of Westchester Reform Temple v Brown,* 22 N.Y.2d 488, 496 (1968), also cited in *High Street United Methodist Church v. City of Binghamton,* 715 N.Y.S.2d 279, 283 (Sup. Ct., Broome County, 2000).

[5] *Westchester Reform Temple,* at 497, reiterating the Court of Appeals' holding in *Matter of Diocese of Rochester v. Planning Board,* 1 N.Y.2d 508.

[6] **Error! Main Document Only.***Matter of Capriola v Wright,* 73 AD3d 1043, 1045, 900 N.Y.S.2d 754 (2d Dept 2010); *St. Thomas Malankara Orthodox Church, Inc., Long Island v Board of Appeals, Town of Hempstead,* 23 AD3d 666, 804 N.Y.S.2d 801 (2d Dept 2005).

[7] *Gospel Faith Mission Int'l, Inc. v. Weiss,* 2013 NY Slip Op 8439, 112 A.D.3d 824, 977 N.Y.S.2d 333 (N.Y. App. Div. 2013), motion for lv. to appeal den. 23 N.Y.3d 997, 992 N.Y.S.2d 763 (2014).

[8] *Westchester Day School v. Village of Mamaroneck,* 504 F.3d 338, 353 (2d Cir. 2007).

Bnei Torah, 62 Riverglen Dr, Thiells        Page 7

As noted above, working with the Town's consultants, the applicant congregation has modified and reduced its proposal in order to more closely comply with the requirements of the Zoning Code. It has reduced the capacity of its sanctuary from 200 to 107, a size that allows almost no room for additional growth. It has relocated the entrance driveway and the parking area, and increased the size of the parking area. It has taken measures to reduce the amount of grading necessary to support the project.

Despite these measures, the applicant will still require variances from the Zoning Board of Appeals and relief to allow activities and development within the conservation easement. The applicant believes that, as a religious institution, and under the circumstances present, it is entitled to those variances and relief under both State and federal law.

Dated: September 14, 2021
        New City, New York

                                EMANUEL LAW P.C.

                                By:_____
                                   Ira M. Emanuel
                                   Attorneys for applicant