

# TOWN OF HAVERSTRAW
BUILDING DEPARTMENT

George T. Behn, Jr.  
Building Inspector II

Erich J. Desch  
Deputy Building Inspector

3/18/2021

The Applicant has submitted a proposal to the Town for the property located at 62 Riverglen Drive shown on the Town tax map as Section 25.12, Block 1, Lot 31 (the "Property"), which is located in the R-25 Low-Density Residential Zoning District. The Applicant is proposing an addition to an existing single-family home in order to operate a synagogue out of the structure. The Applicant is also proposing related modifications and improvements including modified/extended access and additional parking to accommodate the use. This use is permitted in the R-25 zoning district subject to the conditions and requirements of the Town Code, and particularly Zoning Code § 167-58. This application was discussed at the Planning Board workshop on January 28, 2021, at which time the issue of a conservation easement on the Property was raised.

By way of background, the Property was created as part of a 62-lot subdivision encompassing 42.798 acres entitled Carlton Hills, of which the Property was part of Section 1 of the subdivision. The subdivision map for Section 1 was filed with the County Clerk on May 27, 1983 as Map No. 5493 (Exhibit "A").[1] As part of the subdivision approval, and as shown on the filed subdivision plat, a 100-foot wide conservation easement was placed around the perimeter of the subdivision, burdening to some degree at least half of the 62 residential parcels created by the subdivision. As the Property is a corner lot, the conservation easement encompasses both the eastern and southern portion of the Property. The existing single-family structure is not within the conservation easement, but a portion of the proposed driveway and the majority of the proposed parking would be located within the designated conservation easement.

When final subdivision approval was granted by the Planning Board on February 9, 1983, one of the conditions was that "the developer will provide deeds for all of the streets and public improvements and easements in the entire three sections of the subdivision" (Exhibit "B"). However, based upon the Town's review of its records and those filed with the Rockland County Clerk, it appears the developer never provided the deed for the conservation easement as required by the subdivision approval. In addition, there is a note on the filed subdivision plat that provides "the Owner or his representative hereby irrevocably offers for dedication to the Town of Haverstraw all the streets, easements, parks and required utilities shown on the within subdivision plat and construction plans," which note is boxed off and specifically signed by Marshall Davis, the Applicant, dated May 10, 1983. The Town's records do not reflect that the Town Board ever formally accepted the offer of dedication of the conservation

---

[1] I am advised the filing of the plat with the noted conservation easement predates the enactment of New York Environmental Conservation Law, Article 49, Title 3.



# TOWN OF HAVERSTRAW

easement, but as it was an irrevocable offer of dedication, the offer does not expire and as the Town Board has not expressly rejected the offer of dedication it could still accept the conservation easement for the entire subdivision at any time.

In light of the fact that the easement was a requirement of the subdivision approval that has since been fully-developed and that the easement is shown on the filed subdivision plat with an irrevocable offer of dedication, this easement must be considered as part of any proposed expansion or redevelopment of any of the parcels within the subdivision burdened by the easement, including the Property. That being said, Zoning Code § 167-3 provides a definition for conservation easement, which allows the Planning Board to authorize certain functions to be performed in the designated conservation easement. This will be considered as part of the Planning Board's site plan review, which is required due to the proposed construction and change of use.


George T. Behn Jr. *Building Inspector II*


Cc:  Town of Haverstraw Town Board
     Town of Haverstraw Planning Board

# Exhibit A



# Exhibit B

# Town of Haverstraw

PLANNING BOARD
~~XXX NEW MAIN STREETX~~
~~HXVERSTRAWXXXXX10XX~~
1 Rosman Road
Garnerville, New York 10923

Planning Board minutes of February 9, 1983 meeting.

The meeting was called to order at 8 P.M. Present were Robert Komonchak, Chairman; Frank Rundell, Thomas Gisonni, Frank Bumbolow and David Adams. Also in attendance were Arthur Moskoff, Town Attorney; Manny Emanuel, Planning Consultant; Fred Mittermeier, Town Engineer.

I) **CARLTON HILLS - PUBLIC HEARING ON MAJOR SUBDIVISION**

Appearing before the Board was James J. Freeman, Esq. and Mr. Theodore Atzl who presented the Board with the receipts of the meeting.

Also, present was Mr. Anthony Guarisco, Court Reporter, whose detailed minutes are attached hereto. Mr. Adams read the Notice of of Public Hearing. Following discussion of the application the following resolution was made by Mr. Bumbolow, seconded by Mr. Gisonni and on roll call vote unanimously adopted:

RESOLVED, that the Planning Board of the Town of Haverstraw does hereby grant Final Subdivision Approval to the application of Carlton Hills for a 62 Lot Subdivision presented at this meeting and the Chairman is authorized to sign a map subject to the following conditions:

1) Recommendation of the Town Engineer, Town Attorney and Town Planner.

2) That the approval shall be subject to the Town Board's approval and condition for removal of a note concerning the ballfield.

3) That the developer will provide deeds for all of the streets and public improvements and easements in the entire three sections of the subdivision.

4) Subject to the recommendation of the Planning Board regarding bonding amounts and the methods of bonding.

5) That the map shall contain revisions to the notes concerning the County Planning Board and County Drainage Agency requirements and that said note shall require the compliance of the County Planning Board and the County Drainage Agency.

II) HERAEUS MIDLAND PROCESSING

Appearing before the Board was Mr. Arnold Craft and Mr. Larry Adler who presented plans for an amended Site Plan.

Mr. Adler noted that the plan being presented contained modifications from the original Site Plan. He noted that many of these changes occurred because changes in circumstance since the time the original plan was filed, for example, building were to be occupied in a certain manner. Since that time there have been changes. They are asking the Board to reconsider these items.

Mr. Craft noted that a light originally planned to be removed by the front of the building has not yet been removed. Mr. Mittermeier questioned whether the applicants had installed lights on the front of the building as per their architectural plans. The applicants noted that that plan was no longer valid due to changes which had occurred since then and that the only lights to be removed were lights along Quaker Road.

Mr. Moskoff suggested to the Board that rather discuss the various merits of the lighting plan that instead that item be referred to the staff for their review and recommendation.

Mr. Adler also noted that an area which had originally been called for as a truck loading ramp provided complications for the use of Midland for their forklift trucks. It was instead requested the paving be left as it was and that the three parking spaces there will be retained and that they will provide curb bumpers and paint stripes for the parking area.

Mr. Mittermeier noted that a further problem was the matter of a fire access around the rear of the building and the company's use of forklifts in that area. It was further compounded by their use of compactors in that general area. He had suggested depressing part of the area there to provide access for the forklift and yet also provide a fire lane as well. A further question which was noted on the map concerned a note pertaining to the fact that if there were to be any change in use or ownership the Town were to be notified and approval obtained from the Planning Board.

Mr. Moskoff noted in regard to the matter of the forklift area that perhaps the three parking spaces suggested for that area be eliminated and simply designated as a work area. The Chairman agreed with that suggestion.

The Chairman further noted that the applicants had also arbitrarily eliminated curb from that area and pointed out that throughout the years Midland Processing had always discussed their actions with the Town and there had not been any problems. He thought that it was unfortunate that they had seemed to change their procedures at this time and therefore had created a great degree of difficulty for all parties concerned.

Mr. Adler further noted that at the parking at the south end of Building #1 the curbs had been eliminated in order to facilitate trucks coming around that curb and into the parking spaces without

Planning Board                    -3-              February 9, 1983

going over the curbs. Also, having parking spaces in that area presented a hazard and a difficulty to the employees working in that area.

    Mr. Craft also noted that three of the spaces did not conform to the Code again due to the changes which were made, however, they were requesting that those spaces be designated as staff parking which will be only used for by people who will come in in the morning and leave at the end of the day. Mr. Craft noted that the same thing occurred at the north end of the building where a curb return had been proposed and the parking spaces were to be a full 20 foot depth. The size was squared off again for truck access and so the spaces were reduced in size. He further noted that the spaces, though smaller, would facilitate a larger car.

    Mr. Adler noted that at the back of the annex on Building I there was one existing compactor. Because of the functioning of the compactor there was a need to install a second compactor and the applicants are now proposing to install it along side of the first compactor and to extend the pavement in that area.

    Upon questioning by Mr. Komonchak Mr. Craft noted that this had not yet been done although the second compactor had just been put there.

    Upon questioning by Mr. Mittermeier, Mr. Craft noted that there had been more than two compactors at that site due to the fact that the hauler was removing old disintegrating compactors and replacing them with new ones.

    Mr. Mittermeier noted that while he had no objection to what they were proposing, in putting in a second compactor, that their plans should then take into account landscaping to provide screening for it.

    It was noted that the original landscaping in that area, had not been done, and that the purpose of that landscaping was to screen the entire back of the building from sight at Route 202.

    Mr. Komonchak noted that this point would be referred to the engineer and planner for further review and recommendation.

    Mr. Craft noted that basically Midland was not recommending or proposing any additional landscaping at this time. Mr. Moskoff suggested again that Mr. Craft discuss the matter with the engineer and planner.

    Another item noted by Mr. Adler was that the airconditioner at Building #2 has been moved to the roof of the building, rather than on the ground as originally proposed. It has been placed on the roof and will be painted a dark color so that it will not be obtrusive from anywhere. Mr. Mittermeier noted that he did not have a problem with that change.

Planning Board                    -4-              February 9, 1983

Mr. Mittermeier noted that the last change was along the southwest corner of Building #2, an area that was supposed to be a gravel drive and to be used as a fire lane only has had a pretty steady use and the trailers have been parked in the area. He further noted though the trailer parking was supposed to be temporary, parking had been there for over three years.

Mr. Craft disputed this stating that they had not been there over three years, that they were temporary trailers and three years ago the building was not occupied.

Mr. Mittermeier noted that there were other construction trailers there over three years ago. Mr. Craft noted that the trailers being used now are part of over the road shipment vehicles and some are being repaired down there.

Mr. Komonchak pointed that what had been done was that Midland had just decided to use the area for the storage of trailers and had taken upon themselves to do so though it was prohibited by the Code. Furthermore, he noted that if that was the case and they wanted to use the area then that matter should be brought to the Town and discussed and any road being used there then should have been paved.

Mr. Komonchak noted that he would not approve that plan. He also noted as far as he was concerned, the use of the area for parking of their vehicles or trucks was totally unacceptable.

Mr. Adler noted that there were two other changes in the plan, one was a proposal for a particular type of protection for an embankment on the north side. He noted that it had not been constructed in that manner. He did note that it was there and that it was functioning although he has not made an analysis of it.

Mr. Mittermeier asked if he could be given design computations on that. Mr. Adler replied that he did not know what they are but that the wall is stable though having been through some rough rain storms. Mr. Mittermeier noted that he was concerned about the stability there, that it is a deep embankment and you have a parking lot going right to the edge of the embankment.

Mr. Adler noted that prior to the retaining wall being installed that there had been erosion in the area, now it is all stable. Mr. Adler had no question in his mind that the retaining wall was stable.

Mr. Mittermeier noted that though there was a question of liability he was not so much concerned about that as the possibility of a truck going down the hill.

Mr. Komonchak noted that he wanted a report from the Planning Consultant, Town Engineer and Town Attorney in regard to this particular matter.

Mr. Adler noted that finally the notes on the map were the same, however, there was a question of open storage on the site.

Mr. Komonchak noted that the applicant should come back with plans and that the Board would not give any carte blanche approvals that it must be put down on the map.

Mr. Craft raised a question asking the Town to reduce his bond. He noted that he had submitted previous requests to reduce the bond and was told to make a submission of information.

The Chairman pointed out that the matter of reducing the bond was not a function of this Board but was instead to be a request to the Town Board. It was further noted that the Bond was in the amount of $260,000 and is in the name of Robin Construction Company. This Bond had been transferred to the Town to Midland Processing.

The Chairman then directed that the matter be reviewed to the staff for further review and recommendation in regarding to the lighting, landscaping and retaining wall and proposed storage areas.

III)   ROCKLAND CABLESYSTEMS

The Chairman noted that there was no one there to represent the applicant and therefore this matter would be held over until the next meeting of the Board when a representative of the applicant was present.

ADJOURNMENT

The following resolution was offered by Mr. Gisonni, seconded by Mr. Rundell and on roll call vote unanimously adopted:

RESOLVED, that the February 9, 1983 Planning Board meeting is hereby adjourned.

Respectfully submitted,

F.J. MITTERMEIER, JR., P.E.
TOWN ENGINEER
ACTING SECRETARY

FJM/bb