
RECEIVED
JUL 1 4 2022
TOWN CLERK

TOWN OF HAVERSTRAW
TOWN CLERK
JUL 1 4 2022
RECEIVED

# RESOLUTION OF THE TOWN OF HAVERSTRAW ZONING BOARD OF APPEALS

Application of K'hal Bnei Torah of Mount Ivy
62 Riverglen Drive, Thiells, New York
Tax Lot No. 25.12-1-31
R-25 zoning district

WHEREAS, the Applicant, K'hal Bnei Torah of Mount Ivy, has submitted an application to the Town of Haverstraw Zoning Board of Appeals ("ZBA") for area variances to convert and expand an existing single-family home to a house of worship, which use is permitted in the R-25 zoning district subject to the requirements of the Zoning Code, and make other related improvements including a parking lot and retaining walls (the "Proposed Project"); and

WHEREAS, the Applicant is seeking certain area variances as stated in the submission by Emanuel Law P.C. dated February 1, 2022:

The following variances are existing conditions on the Property:

- Lot width – variance of 16.06 feet where 200 feet is required and 183.94 feet is existing
- Street frontage – variance of 22.47 feet where 200 feet is required and 177.53 feet is existing
- Front yard – variance of 22.6 feet where 60 feet is required and 37.4 feet is existing
- Side yard – variance of 18.3 feet where 35 feet is required and 16.7 feet is existing

The following variances are being requested by the Applicant for the Proposed Project:

- Floor Area Ratio – variance of .84 where .1 is permitted and .184 is proposed
- Parking spaces – variance of 9 parking spaces where 36 required and 27 proposed (the 36 required includes the 27 for the main use and the additional 9 spaces for the meeting room)
- Parking in front yard – variance of 41.7 feet where 60 feet is required and 18.3 feet is proposed

WHEREAS, the Applicant submitted the following plans in connection with this application:

1. Site Plan Set, Prepared by Brooker Engineering, PLLC, last revised 01/21/2022

    - Title Sheet
    - Existing Conditions & Slope Analysis
    - Site Plan
    - Grading and Utility Plan
    - Erosion and Sediment Control Plan
    - Detail Sheet (1 of 2)
    - Detail Sheet (2 of 2)

1

EXHIBIT 5

2. Architectural Plans, Prepared by Sketchy Plans, Signed and Sealed by Eric Knute Osborn, R.A., NYS Lic. No. 021585, dated 02/23/2022

- T-100.00
- A-100.00
- A-101.00
- A-102.00
- A-200.00
- A-201.00

WHEREAS, this application has gone through a lengthy review process before the Planning Board workshop staff, the Planning Board and the Zoning Board and changes were made to the plans by the Applicant to address potential impacts; and

WHEREAS, the Zoning Board held a preliminary presentation on this application at its February 9, 2022 meeting, opened a duly-noticed public hearing at its April 13, 2022 meeting, which public hearing was continued to its July 13, 2022 meeting, and members of the public having the opportunity to attend and be heard, the public hearing was closed on July 13, 2022; and

WHEREAS, the Town of Haverstraw Planning Board served as lead agency for a coordinated review pursuant to the State Environmental Quality Review Act ("SEQRA"), and at its June 8, 2022 meeting adopted a Negative Declaration thus ending the SEQRA process; and

WHEREAS, the federal Religious Land Use and Institutionalized Persons Act ("RLUIPA") "is the latest in long-running congressional efforts to accord religious exercise heightened protection from government imposed burden, consistent with Supreme Court precedent;"[1] and

WHEREAS, RLUIPA "prohibits a governmental entity from applying a land use regulation 'in a manner that imposes a substantial burden on the religious exercise of a person or institution,'"[2] and when the religious use "has no ready alternatives, or where the alternatives require substantial 'delay, uncertainty, and expense,'" a denial of the land use application could demonstrate a substantial burden on religious exercise;[3] and

WHEREAS, federal "courts have held zoning ordinances, or zoning decisions, that significantly lessen the prospect of a religious institution being able to use the property to further its religious mission contravene RLUIPA;"[4] and

WHEREAS, if this application was subject to RLUIPA litigation, RLUIPA's "remedial purpose and effect" to alleviate any substantial burden on the Applicant's religious exercise could

---

[1] *Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 261 (3d Cir. 2007), *quoting, Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005).
[2] *Westchester Day School v. Village of Mamaroneck*, 386 F.3d 183, 186 (2d Cir. 2004), *quoting*, 42 U.S.C. § 2000cc(a)(1).
[3] *Westchester Day School v. Village of Mamaroneck*, 504 F.3d 338, 349 (2d Cir. 2007) (*emphasis added*).
[4] *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 138 F.Supp.3d 352, 432 (S.D.N.Y. 2015), *citing, Guru Nanak Sikh Soc'y of Yuba City v. County of Sutter*, 456 F.3d 978, 992 (9th Cir. 2006) *and Roman Catholic Diocese of Rockville Centre v. Village of Old Westbury*, No. 09-CV-5195, 2012 WL 1392365, at *8 (E.D.N.Y. Apr. 23, 2012).

result in significant monetary penalties to the Town (which would be the burden of the taxpayers) as well as a more impactful project, and in this circumstance a federal court has held that "[a]ny purported 'burden' on the [municipality] and its residents is an inevitable consequence of resolving RLUIPA litigation, which Congress anticipated when drafting the statute and requiring its remedial construction,"[5] and in holding such the Court rejected the allegations of "reverse discrimination" under, or "weaponization" of, RLUIPA; and

WHEREAS, in addition, under longstanding State law, educational and religious uses "have enjoyed special treatment with respect to residential zoning ordinances and have been permitted to expand into neighborhoods where nonconforming uses would otherwise not have been allowed"[6] and "greater flexibility is required in evaluating an application for a religious use than an application for another use and every effort to accommodate the religious use must be made;"[7] and

WHEREAS, local zoning also cannot require a showing "that *no* ill effects will result from the proposed use" as this "is improper because it fails to recognize that educational and religious uses ordinarily have inherent beneficial effects";[8] and

WHEREAS, "[t]he presumptive value of religious facilities must be balanced against any actual detriment to the public health safety or welfare, bearing in mind that typical hazards of traffic congestion, noise, diminution in property values, and the like, are generally insufficient to outweigh the public benefit of religious institutions and the constitutional protections to which such organizations are entitled,"[9] and "where an irreconcilable conflict exists between the right to erect a religious structure and the potential hazards of traffic or diminution in value, the latter must yield to the former;"[10] and

NOW THEREFORE,

BE IT RESOLVED, in light of the foregoing, the findings of this Board are as follows:

1. There will not be an undesirable change produced in the character of the neighborhood or detriment to nearby properties as a result of the variances. As noted above, under controlling law religious uses are presumptively beneficial to the community and this use is permitted in all zoning districts in the Town. In addition, the Applicant will be required to obtain approval from the Architectural Review Board to ensure that the house retains its existing residential character with the addition. To the extent there may be parking on the street as a result of the use, there have been submissions by the public demonstrating that there are other residential areas in the Town where there is existing on-street parking related to

---

[5] *Woodcliff Lake Citizens Against Overdevelopment, Inc. v. Borough of Woodcliff Lake*, 2022 WL 874440, *9 (D.N.J. 2022).
[6] *Pine Knolls Alliance Church v. Zoning Bd. of Appeals of Town of Moreau*, 5 N.Y.3d 407, 412 (2005), *quoting*, *Cornell University v. Bagnardi*, 68 N.Y.2d 583, 593 (1986).
[7] *Gospel Faith Mission Intern., Inc. v. Weiss*, 112 A.D.3d 824, 825 (2d Dep't 2013), *quoting*, *Genesis Assembly of God v. Davies*, 208 A.D.2d 627, 628 (2d Dep't 1994).
[8] *Cornell University v. Bagnardi*, 68 N.Y.2d 583, 597 (1986) (*emphasis supplied*).
[9] *High Street United Methodist Church v. City of Binghamton Planning Com'n*, 715 N.Y.S.2d 279, 283 (Broome Co. Sup. Ct. 2000), *citing*, *Westchester Reform Temple v. Brown*, 22 N.Y.2d 488, 496 (1968).
[10] *Westchester Reform Temple v. Brown*, 22 N.Y.2d 488, 497 (1968).

religious uses. Notwithstanding such, the Applicant is proposing a 27-space parking area to minimize on-street parking, which parking area is required under the Town Code for this reason and per the plans will be screened with landscaping.

2. The benefit to the Applicant cannot be achieved by any feasible means for the Applicant to pursue other than seeking the requested area variances. Here, the benefit sought by the Applicant is to use the Property as a house of worship, a use that is entitled to considerable deference and accommodation by this Board under controlling state and federal law. The Applicant did a lengthy presentation before the Planning Board, the minutes of which were submitted to the Zoning Board, outlining the need for the addition of its proposed size to accommodate the Applicant's religious practices and beliefs, including, but not limited to, having a separate section for women, and having room for tables and bookshelves so that the congregants can review scrolls and large books in the course of their worship.

3. While some of the variances may be considered substantial, individually or collectively, under these circumstances that is not a basis to deny the application. Several of the variances – including lot width, street frontage, front yard and side yard – are all existing conditions due to the Property and the existing structure that would continue to exist regardless of whether the addition was for a house of worship or a larger residential structure. With respect to parking in the front yard, the need for the variance is based upon the need for on-site parking to reduce, to the extent practicable, the number of cars that are parked on the street and the intrusion into the rear conservation easement. While the floor area ratio variance is substantial, the Applicant has demonstrated that under the Town Code a residential home more than twice as large as what the Applicant is proposing could be constructed on the Property without needing a floor area ratio variance. With respect to the number of parking spaces, the Applicant has the requisite number of parking spaces needed for the sanctuary use, and the need for the variance is because of the separate meeting room. As a condition of this Resolution, and as represented by the Applicant, the occupancy of the entire structure shall not exceed 107 people and the sanctuary and meeting room will not be occupied at the same time. During the review process, the Applicant also reduced to size of the building and the occupancy to address comments raised by the Board and its consultants.

4. The proposed variances will not have an adverse effect or impact on the physical or environmental conditions in the neighborhood. As noted above, under the law certain potential impacts such as noise, increase in traffic and alleged diminution in property value, are generally insufficient to override the presumptively beneficial nature of the use and the legal protections afforded to such religious uses. Any issues raised with respect to real property tax revenue or private real estate transactions in the Town are beyond the scope of the Board's jurisdiction. Further, the Planning Board adopted a SEQRA Negative Declaration determining the project does not have the potential for any significant adverse environmental impacts, which Negative Declaration is attached hereto and incorporated herein. The project has been reviewed by the Town's Consulting Engineer to ensure there will be no stormwater impacts from the proposed project and will provide a zero-net increase in stormwater runoff from the site through the installation of a stormwater detention facility. The Town also retained a traffic engineering

4

consultant, Stonefield Engineering & Design, to review the proposed plan and use and to suggest certain on-street traffic, parking and signage mitigation measures so that on-street parking occurs in a safe manner such that there is sufficient room for passenger and emergency vehicle circulation and access – which plan is attached hereto and made a part hereof. These mitigation measures must be implemented as a condition of this approval. The Applicant proposed a reduced parking area of approximately 15 on-site parking spaces, but the Board finds this proposal would likely be more impactful because it would result in more on-street parking. In addition, the Applicant has explained that the reason for proposing the house of worship in this location is because many congregants live within walking distance of the Property, and that the congregants cannot drive during certain times, both of which are expected to reduce the amount of vehicular traffic and parking during those times. In addition, regular daily services will generally be held early in the morning or later in the evening when there is less traffic.

5. While the hardship may be self-created to the extent that the Applicant proposes an addition and parking area that do not comply with all of the bulk requirements of the Zoning Code, this does not necessarily preclude the granting of the variances, especially given the Board's findings on the other area variance criteria and the standard the Board must comply with under federal and state law.

AND IT IS FURTHER RESOLVED based upon the foregoing findings, the application is granted subject to the following conditions:

1. The variances are granted solely in connection with the plans identified herein (which are incorporated by reference) and the variances are granted only to the extent that they authorize the addition and related improvements as shown on those plans. If any material changes are made to the plans, other than those required by the Planning Board and/or Architectural Review Board as part of their review of this proposed project and so long as the change(s) does not increase the number or degree of variances needed, the Applicant must make an application to the ZBA for amended approval. Notwithstanding the foregoing, the Applicant shall revise the bulk table shown on the plans to be consistent with the variances listed herein.

2. The granting of this application shall not be deemed to relieve the Applicant of the need to obtain approvals or permits of any other board, agency or officer as prescribed by law or ordinance with regard to the Approved Plan or construction or any other phase of the project; specifically, approval from the Planning Board for site plan and activities in the conservation easement area, the Architectural Review Board for the design of the structure with the proposed addition, and to the extent feasible implementing the traffic and parking mitigation measures recommended by Stonefield Engineering. Further, the granting of this application shall not be deemed to relieve the Applicant of the need to comply with any and all other local, state and federal requirements, including but not limited to compliance with the New York State Uniform Fire Prevention and Building Code and any applicable regulations related to the proposed use, location or construction.

5

3. As represented and consented to by the Applicant: (a) the occupancy of the entire structure shall never exceed 107 people, (b) the sanctuary and meeting room shall never be occupied at the same time, and (c) no one shall reside on the Property and there shall not be any overnight occupancy of the Property.

4. The Applicant shall advise the congregants to use the parking lot to the extent practicable, abide by all traffic and parking laws and regulations, and utilize safe pedestrian practices.

5. These variances are granted subject to the accuracy of the representations made by the Applicant and its representatives to the ZBA in its written submissions and during the public hearing and if any material representation, whether or not it is included in this Resolution, is found to be inaccurate, at the discretion of the ZBA the Applicant shall be required to make an application for an amended approval.

6. The failure to observe and perform these conditions shall render this resolution invalid.

Dated: July 13, 2022

_____
Acting Chairman

In Favor: 5
Opposed: 0
Abstain: 0
Absent: 0

# STATE ENVIRONMENTAL QUALITY REVIEW

# NEGATIVE DECLARATION

## Notice of Determination of Non-Significance

**Project Name:** 62 Riverglen Schul

**Date:** June 8, 2022

**Lead Agency:** Planning Board
Town of Haverstraw
One Rosman Road
Garnerville, NY 10923

**Prepared by:** Michael D. Kauker, PP, AICP
Kauker & Kauker. LLC
356 Franklin Ave.
Wyckoff, NJ 07481
(201) 847-2900

This notice has been prepared in accordance with Article 8 (State Environmental Quality Review Act) of the New York State Environmental Conservation Law.

The Planning Board of the Town of Haverstraw, as lead agency, has determined that the proposed action described below will not have a significant effect on the environment and a Draft Environmental Impact Statement will not be prepared.

**Name of Action:** 62 Riverglen Schul

**SEQR Status:** Unlisted Action

**Conditioned Negative Declaration:** No

**Description:** The applicant, 62 Riverglen Schul, has submitted a site plan application to the Town of Haverstraw Planning Board to construct an addition to an existing single-family home and convert the entire use to a House of Worship with an associate parking lot which will accommodate 27 parking spaces.

**Location:** The subject property is located on the west side of Riverglen Drive between Dawson Road to the north and Dunnigan Drive to the south. The property is located within the towns R-25 Low-Density Residence District, Town of Haverstraw, Rockland County, New York.

**Reasons Supporting This Determination:**

The proposed development of the site is not anticipated to result in any adverse environmental impacts for the following reasons.

1. The applicant has shown in the SEQRA EAF Part III that the potential environmental impacts associated with the development of this site can be reasonably mitigated through appropriate development techniques, architectural building design, and proper drainage and erosion control measures, as further articulated below.

2. In addressing the potential visual impacts, the applicant indicates that the addition to the existing dwelling to accommodate the proposed house of worship would be limited to the rear portion of the existing dwelling and therefore from a visual perspective would be consistent with the existing established character of the surrounding area as the residential design of the dwelling will remain. The SEQRA Part 3 states, "The mitigation for proposed impacts with respect to the architectural scale include siting the addition in the rear of the house, maintaining the existing front residential style façade, and screening the parking area with fences and landscaping plantings."

3. In addition, the applicant will work with the Architectural Review Board (ARB) to ensure that the addition will be in harmony with the character of the existing residential neighborhood in which the property is located. The proposed facades will be articulated in a manner that limits visual impacts on neighboring properties, especially the adjacent neighbor to the north as that is the closest residence to the proposed addition. The applicant indicates in a letter from Ira M. Emanuel, Esq. to the Town of Haverstraw Planning Board dated April 5, 2022, that "No portion of the front façade is intended to be changed. Thus, the front view of the structure will continue in its current condition,..." Therefore, the proposed addition will not be visible from the street.

4. Although the applicant would require a variance for the proposed number of parking spaces, the applicant contends that because of the type of religious use that congregants are prohibited from driving during certain times of the week, which would reduce the demand for parking during the most heavily attended times. In addition, certain areas of the house of worship will not be used simultaneously, which will also reduce the parking demand.

5. The Town Board has retained a Traffic Expert to review the proposal and their findings conclude that with limitations on on-street parking along Riverglen Drive that any potential impacts that may result from the overflow of traffic if there are any could be reasonably mitigated.

6. To the greatest extent possible the disturbance to the conservation easement will be limited. Although there is encroachment to a portion of the conservation easement it is limited to the parking area and proposed retaining walls and not the building addition itself. In addition, the encroachment to the conservation easement is primarily in the side yard conservation easement. Both the rear yard and side yard conservation easements were established at the time the original subdivision was approved for this development and at the time there was no development to the south of this property. The intent of the conservation easement was to protect and preserve the undeveloped and park land adjacent to the development. Subsequently development has occurred to the south of this property which negates the need for the conservation easement located in the side yard and to the south as the purpose was to preserve and protect the adjacent open space. The conservation easement located in the rear yard which is adjacent to undeveloped heavily wooded lands and park land would be preserved and there would be no impact on this area.

7. The applicant has provided a drainage plan and calculations prepared by Brooker Engineering, PLLC dated April 2021, which addresses the stormwater impacts resulting from the proposed development of the site and provide for a zero-net increase in stormwater runoff from the site through the installation of a stormwater detention facility.

8. Furthermore, the proposed action would not result in any of the following:

   a) A substantial adverse change in existing air quality, ground or surface water quality or quantity, traffic or noise levels; a substantial increase in solid waste production; a substantial increase in potential for erosion, flooding, leaching or drainage problems;

   b) The removal or destruction of large quantities of vegetation or fauna; substantial interference with the movement of any resident or migratory fish or wildlife species; impacts on a significant habitat area; substantial adverse impacts on a threatened or endangered species of animal or plant, or the habitat of such a species; or other significant adverse impacts to natural resources;

   c) The impairment of the environmental characteristics of a critical environmental area as designated pursuant to section 617.14(g) of this Part;

   d) The creation of a material conflict with a community's current plans or goals as officially approved or adopted;

   e) The impairment of the character or quality of important historical, archeological, architectural, or aesthetic resources or of existing community or neighborhood character;

   f) A major change in the use of either the quantity or type of energy;

   g) The creation of a hazard to human health;

# Public Signage & Striping Recommendations

## Proposed Synagogue

**Site Location:** Section 31.13, Block 1, Lot 31, 13 Riverglen Drive, Town of Haverstraw, Rockland County, New York

**Prepared by:** Stonefield Engineering & Design

### Legend
- Parking Allowed
- Parking Prohibited

### Site Map Labels
- SITE
- DUNNIGAN DRIVE
- RIVERGLEN DRIVE
- DAWSON ROAD

### Proposed Signage on Plan
- Existing stop sign (R1-1) and stop bar pavement markings
- Proposed "No Parking Here to Corner" sign (NYR1-9L)
- Proposed "No Parking Any Time" sign (R7-1L)
- Proposed "No Parking Any Time" sign (R7-1R)
- Proposed fire lane striping

### Notes

1. Per Town of Haverstraw Fire Prevention & Building Construction Code Section #4-35A, the Firesafety Inspector shall have the authority to designate emergency fire lanes on any street or access, public or private, which serves multiple dwellings, shopping center, industrial sites, places of public assembly, and such streets to provide for access of fire equipment or to prevent parking on any such street to permit access of fire equipment. The Firesafety Inspector shall notify the Town Clerk, in writing, of such fire lane designations, and the Town Clerk shall notify the Town Superintendent of Highways as to which street or streets shall be so marked for fire lanes. The Firesafety Inspector shall also have the authority to notify the owner of such street to mark such streets pursuant to the order of the Firesafety Inspector at the owner's cost and expense. If such markings shall be made by the Town Highway Superintendent, the cost of the same may be a charge upon said owner as though a tax or special assessment. In addition, as to any private or public property containing more than six dwelling units or on which there is a shopping center, industrial use or place of public assembly, the Firesafety Inspector may designate areas therein for fire lanes for the entry and egress in fighting fires as he shall deem necessary, and he shall notify the owner of said land of his determination.

2. Per New York State Vehicle and Traffic Law Section 1202-2-C, parking is prohibited within 20' of stop signs.