CONDENSED

----------------------------------------x

In Re:

TOWN OF HAVERSTRAW PLANNING BOARD MEETING

----------------------------------------x

          August 10, 2022
          7:30 p.m.

    PLANNING BOARD MEETING held at One Rosman Road, Garnerville, New York, before a Notary Public of the State of New York.

RECEIVED
SEP 1 5 2022
TOWN OF HAVERSTRAW
TOWN CLERK

SANDY SAUNDERS REPORTING
254 South Main Street, Suite 216
New City, New York 10956
(845) 634-7561

EXHIBIT 8

## Page 2

1
2  APPEARANCES:
3  SAL CORALLO, CHAIRMAN
4  GLENN WIDMER
5  JOSEPH MICHALAK
6  ROBERT SAMBRATO
7  ANTHONY GIZZI
8  LESTER KAHN
9  CHRISTIE ADDONA, ESQ., ASSISTANT PLANNING BOARD ATTORNEY
10  MICHAEL D. KAUKER, PLANNING CONSULTANT
11  GLENN McCREEDY, TOWN ENGINEER
12  GEORGE T. BEHN, JR., BUILDING INSPECTOR

## Page 3

PROCEEDINGS

THE CHAIRMAN: Good evening, everyone. Welcome to the Town of Haverstraw Planning Board, August 10, 2022, 7:30 p.m.

Would everyone please stand for the Pledge.

(Whereupon, the Pledge of Allegiance was recited.)

THE CHAIRMAN: Would the clerk please read the roll call.

THE SECRETARY: Sal Corallo?

CHAIRMAN CORALLO: Present.

THE SECRETARY: Glenn Widmer?

MR. WIDMER: Here.

THE SECRETARY: Joe Michalak?

MR. MICHALAK: Here.

THE SECRETARY: Robert Sambrato?

MR. SAMBRATO: Here.

THE SECRETARY: Anthony Gizzi?

MR. GIZZI: Here.

THE SECRETARY: Lester Khan?

MR. KHAN: Here.

THE CHAIRMAN: A quorum is present. Would somebody move for the adoption of the minutes of July 13, 2022.

## Page 4

PROCEEDINGS

MR. GIZZI: Motion.

THE CHAIRMAN: Moved by Mr. Gizzi.

MR. WIDMER: Second.

THE CHAIRMAN: Seconded by Mr. Widmer. All those in favor, signify by saying aye.

(Whereupon, all of the Board Members responded "Aye.")

THE CHAIRMAN: So carried.

Item No. 1. K'hal Bnei Torah of Mount Ivy, 62 Riverglen, Thiells, Section 25.12, Block 01, Lot 31. Site Plan Approval/SEQRA review. Convert a single-family home into house of worship; expand structure; construct a parking lot; retaining wall.

The Public Hearing on this item was closed at our meeting of July 13th. I have asked our attorney to prepare a resolution, I'm going to ask her to read it.

MS. ADDONA: Resolution of the Town of Haverstraw Planning Board. Application of K'hal Bnei Torah of Mount Ivy, 62 Riverglen Drive, Thiells, New York, the property. Tax Lot No. 25.12, Block 01, Lot 31. R-25 Zoning District.

Whereas, the applicant, K'hal Bnei Torah

## Page 5

PROCEEDINGS

of Mount Ivy, has submitted an application to the town of Haverstraw Planning Board for site plan approval and approval to conduct certain functions in areas of the property identified as a conservation easement, in order to convert and expand an existing single-family home to a house of worship, which use is permitted in the R-25 Zoning District, and make other related improvements, including a parking lot and retaining walls (the "proposed project"); and

Whereas, the applicant submitted the following plans in connection with this application:

1. Site plan set, prepared by Brooker Engineering, PLLC, last revised 1/21/2022.
   Title sheet.
   Existing conditions and slope analysis.
   Site plan.
   Grading and utility plan.
   Erosion and sediment control plan.
   Detail sheet 1 of 2.
   Detail sheet 2 of 2.

2. Architectural plans, prepared by Sketchy Plans, signed and sealed by Eric Knute

## Page 6

1 PROCEEDINGS
2 Osborn, RA, New York State License No. 021585,
3 dated 2/23/2022. Sheets T-100.00, A-100.00,
4 A-101.00, A-102.00, A-200.00, A-201.00.
5     Whereas, the property is shown as Lot 11
6 on the Carlton Hills subdivision plat, which is a
7 62-lot subdivision encompassing approximately
8 43 acres, and Section 1 of the Carlton Hills
9 subdivision plat, of which the property is a part,
10 was filed with the Rockland County Clerk on May 27,
11 1983, as Map No. 5493; and
12     Whereas, there is a 100-foot-wide buffer
13 around the perimeter of the subdivision that is
14 identified on the plat as a "conservation
15 easement"; and
16     Whereas, as the property was a corner lot
17 of the Carlton Hills subdivision, the property is
18 burdened with this 100-foot buffer on both the west
19 and south sides of the property; and
20     Whereas, this area identified as
21 a "conservation easement" was never accepted by the
22 Town or recorded as a separate document with the
23 County Clerk or the New York State Department of
24 Environmental Conservation, and the DEC has advised
25 they have no record of, nor do they regulate, this

## Page 7

1 PROCEEDINGS
2 area on the applicant's property; and
3     Whereas, this area has been treated as a
4 local zoning restriction, like other setback and
5 bulk requirements, and the town code authorizes the
6 Planning Board to approve functions in areas
7 designated as a conservation easement; and
8     Whereas, the Planning Board held a
9 preliminary presentation on this application at its
10 August 11, 2021 meeting and opened a duly-noticed
11 Public Hearing at its November 10, 2021, meeting,
12 which Public Hearing was continued at its
13 January 12, 2022 meeting, February 9, 2022 meeting,
14 March 9, 2022 meeting, April 13, 2022 meeting,
15 May 11, 2022 meeting, June 8, 2022 meeting, and
16 July 13, 2022 meeting, and members of the public
17 having ample opportunity to attend and be heard,
18 the Public Hearing was closed on July 13, 2022; and
19     Whereas, the Planning Board served as
20 lead agency for a coordinated review pursuant to
21 the State Environmental Quality Review Act, and at
22 its June 8, 2022, meeting adopted a negative
23 declaration, thus ending the SEQRA process, which
24 negative declaration is attached hereto and made a
25 part hereof; and

## Page 8

1 PROCEEDINGS
2     Whereas, at its July 13, 2022 meeting,
3 the Town of Haverstraw Zoning Board of Appeals
4 unanimously adopted a resolution granting certain
5 area variances, including four area variances that
6 were related to existing conditions on the
7 property, that would exist regardless of whether
8 the property continued to be used for residential
9 purposes or the property is converted to a house of
10 worship, and three area variances related to the
11 proposed use of the property as a house of worship;
12 and
13     Whereas, the Town retained a traffic
14 engineering consultant, Stonefield Engineering &
15 Design, to review the proposed plan and use and to
16 suggest certain on-street traffic, parking and
17 signage mitigation measures so that on-street
18 parking occurs in a safe manner such that there is
19 sufficient room for passenger and emergency vehicle
20 circulation and access ("Stonefield plan"), which
21 plan is attached hereto and made a part hereof; and
22     Whereas, the Federal Religious Land Use
23 and Institutionalized Persons Act, ("RLUIPA") "is
24 the latest in long-running congressional efforts to
25 accord religious exercise heightened protection

## Page 9

1 PROCEEDINGS
2 from government imposed burden, consistent with
3 Supreme Court precedent;" and
4     Whereas, RLUIPA "prohibits a governmental
5 entity from applying a land use regulation in a
6 manner that imposes a substantial burden on the
7 religious exercise of a person or institution," and
8 when the religious use "has no ready alternatives,
9 or where the alternatives require substantial
10 'delay, uncertainty, and expense,'" a denial of the
11 land use application could demonstrate a
12 substantial burden on religious exercise; and
13     Whereas, "federal courts have held zoning
14 ordinances or zoning decisions, that significantly
15 lessen the prospect of a religious institution
16 being able to use the property to further its
17 religious mission contravene RLUIPA;" and
18     Whereas, if this application was subject
19 to RLUIPA litigate, RLUIPA's "remedial purpose and
20 effect" to alleviate any substantial burden on the
21 applicant's religious exercise could result in
22 significant monetary penalties to the Town (which
23 would be the burden of the taxpayers) as well as a
24 more impactful project, and in this circumstance, a
25 federal court has held that "any purported 'burden'

Page 10

```
 1                PROCEEDINGS
 2   on the municipality and its residents is an
 3   inevitable consequence of resolving RLUIPA
 4   litigation, which congress anticipated when
 5   drafting the statute and requiring its remedial
 6   construction," and in holding such, the Court
 7   rejected the allegations of "reverse
 8   discrimination" under, or "weaponization" of,
 9   RLUIPA; and
10            Whereas, in addition, under longstanding
11   state law, educational and religious uses "have
12   enjoyed special treatment with respect to
13   residential zoning ordinances and have been
14   permitted to expand into neighborhoods where
15   nonconforming uses would otherwise not have been
16   allowed" and "greater flexibility is required in
17   evaluating an application for a religious use than
18   an application for another use, and every effort to
19   accommodate the religious use must be made;" and
20            Whereas, local zoning also cannot require
21   a showing "that no ill effects will result from the
22   proposed use" as this "is improper because it fails
23   to recognize that educational and religious uses
24   ordinarily have inherited beneficial effects;" and
25            Whereas, "the presumptive value of
```

Page 11

```
 1                PROCEEDINGS
 2   religious facilities must be balanced against any
 3   actual detriment to the public health, safety, or
 4   welfare, bearing in mind that typical hazards of
 5   traffic congestion, noise, diminution in property
 6   values, and the like, are generally insufficient to
 7   outweigh the public benefit of religious
 8   institutions and the constitutional protections to
 9   which such organizations are entitled," and "where
10   an irreconcilable conflict exists between the right
11   to erect a religious structure and the potential
12   hazards of traffic or diminution in value, the
13   latter must yield to the former;" and
14            Now therefore,
15            Be it resolved, in light of the
16   foregoing, and based upon the following findings,
17   the Planning Board authorizes the functions shown
18   on the site plan in the areas designated as being
19   in the "conservation easement":
20            1. The western boundary of the property
21   (the rear of the lot) abuts public parkland. All
22   of the parcels on the west side of Riverglen Drive
23   in the Carlton Hills subdivision have the
24   conservation easement area running along the rear
25   of the property abutting the parkland. The
```

Page 12

```
 1                PROCEEDINGS
 2   Planning Board and its consultants worked with the
 3   applicant to minimize the intrusion into the
 4   western conservation easement to the extent
 5   possible, such that the only activity in the
 6   western conservation easement will be the
 7   installation of retaining walls to support the
 8   construction of a parking lot needed to provide
 9   on-site parking for the use. The applicant
10   proposed reducing the size of the parking lot from
11   the 27 parking spaces to 15 parking spaces, which
12   would have potentially eliminated the need to
13   encroach upon the western conservation easement.
14   However, the Board finds the impacts from reducing
15   the amount of on-site parking would be greater than
16   the minimal intrusion into the western conservation
17   easement area.
18            2. This is the only parcel in the entire
19   Carlton Hills subdivision that is burdened with the
20   conservation easement area on two sides of its
21   property. None of the other lots in the
22   subdivision are burdened on the entire side of
23   their property with the conservation easement area.
24   While at the time of the subdivision, the southern
25   boundary (the side of the lot) also abutted
```

Page 13

```
 1                PROCEEDINGS
 2   undeveloped land, this land has since been
 3   developed with a single-family home. Therefore,
 4   the conservation easement area along the southern
 5   boundary of the property no longer serves its
 6   intended function. The rest of the neighborhood
 7   has been developed and it is overly burdensome to
 8   the property to have to abide by the conservation
 9   easement area when the other properties in the
10   subdivision (and surrounding the subdivision) do
11   not have this restriction.
12            In addition, the activities in the
13   southern conservation easement area is for the
14   construction of an on-site parking lot that is
15   required by the town code and is necessary to
16   support the use of the property without
17   overburdening the on-street parking. The applicant
18   is also proposing to install ample landscaping
19   around the parking lot, including in the
20   conservation easement area.
21            3. The existing driveway on the property
22   already encroaches upon the southern conservation
23   easement area.
24            4. To the extent other property owners
25   claimed they were not allowed to do work in the
```

Page 14

1 PROCEEDINGS
2 conservation easement area on their own property,
3 the code allows all property owners to seek
4 permission from the Planning Board for functions in
5 conservation easement areas.
6     5. To the extent other property owners
7 claimed they received violations from the town for
8 work done in the conservation easement areas on
9 their property, that is because they did not follow
10 the proper procedure in notifying the Town and
11 seeking the proper authorizations and/or approvals
12 before engaging in the work. In this instance, the
13 applicant has made an application to the Planning
14 Board and has gone through a lengthy and thorough
15 land use review process during which the Planning
16 Board and its staff/consultants reviewed various
17 iterations of the plans and considered the costs
18 and benefits of allowing these activities in the
19 conservation easement area.
20     Specifically, the applicant will have to
21 ensure there will be no storm water impacts from
22 the proposed project and will provide a zero-net
23 increase in stormwater runoff from the site through
24 the installation of a stormwater detention
25 facility.

Page 15

1 PROCEEDINGS
2     6. In this specific situation, the Board
3 finds that given (a) the deference and
4 accommodations that must be afforded to the
5 religious uses under state and federal law, (b) the
6 unique history and application of the conservation
7 easement area as it relates to this property, (c)
8 the thorough and lengthy land use review process
9 for this application, and (d) the fact that the
10 functions in the conservation easement area are
11 related to the parking lot that is necessary for
12 the religious use and to reduce potential impacts
13 to the neighborhood, it is warranted to authorize
14 the functions shown on the site plan in the
15 conservation easement areas.
16     And be it further resolved, based upon
17 the foregoing, the application for preliminary and
18 final site plan approval to construct an addition
19 to the existing structure and related improvements,
20 including a parking lot and retaining walls, to
21 convert the property to a house of worship are
22 granted with the follow be limitations and
23 conditions:
24     1. Prior to the signing of the approved
25 plans by the Planning Board Chairman, the following

Page 16

1 PROCEEDINGS
2 conditions must be met:
3     A. The applicant shall comply with all
4 rules, regulations, and requirements of any and all
5 agencies, entities, departments, boards, and
6 municipalities with jurisdiction over the proposed
7 project, and this approval is conditioned upon the
8 applicant receiving any and all approvals/permits
9 required by such agencies without material
10 deviation from the approved plans.
11     B. The applicant shall revise the bulk
12 table shown on the plans to be consistent with the
13 variances granted by the Zoning Board.
14     C. The applicant shall pay all
15 outstanding monies owed to the Town in connection
16 with the Planning Board and its consultants and
17 staff processing, reviewing, and preparing
18 documentation on this application.
19     D. No portion of any approval by the
20 Planning Board shall take effect until (1) all of
21 the above-stated conditions are met, (2) the
22 approved plans are signed by the Chairman of the
23 Planning Board, and (3) the approved plans signed
24 by the Chairman of the Planning Board are filed
25 with the Building Department.

Page 17

1 PROCEEDINGS
2     2. Prior to issuance of a building
3 permit, the applicant shall complete the following:
4     A. In accordance with Town Code 137-96(A)
5 and A173-10(D), the applicant shall provide a
6 performance bond in a form satisfactory to the
7 Planning Board attorney and in an amount
8 satisfactory to the Town Consulting Engineer based
9 upon the cost estimate of the site plan
10 improvements as shown on the approved plans to
11 ensure adequate completion of these improvements.
12     B. In accordance with Town Code
13 A173-16(B), the applicant shall provide escrow
14 established based upon a percentage of the town
15 consulting engineer's cost estimate to ensure the
16 site improvements can be inspected for compliance
17 with the approved plans.
18     C. The applicant shall obtain approval
19 from the Architectural Review Board for a design of
20 the structure that is consistent with the
21 residential character of the neighborhood, but that
22 does not make any other changes to the size,
23 layout, location, or configuration of the structure
24 or the property. If any such changes are made to
25 the plans, the applicant shall make an application

## Page 18

PROCEEDINGS

to the Planning Board for amended site plan approval.

3. Prior to obtaining a certificate of occupancy:

A. The applicant shall use all feasible efforts to implement the on-street mitigation measures shown on the Stonefield Plan and

B. The applicant shall ensure the structure is fully-sprinklered and shall incorporate any other fire protection measures deemed necessary by the Building Inspector and the Fire Department to ensure compliance with the Uniform Fire Prevention and Building Code.

4. Any proposed signage on the property or abutting the property in the Town's right of way shall comply with the town code and the applicant shall obtain any necessary approvals from the Town prior to installation.

5. As represented and consented to by the applicant: (a) the occupancy of the entire structure shall never exceed 107 people, (b) the sanctuary and meeting room shall never be occupied at the same time, and (c) no one shall reside on the property and there shall not be any overnight

## Page 19

PROCEEDINGS

occupancy of the property.

6. The applicant shall advise the congregants to use the parking lot to the extent practicable, abide by all traffic and parking laws and regulations, and utilize safe pedestrian practices.

7. The Planning Board attorney shall submit a memorandum to the Town Board on behalf of the Planning Board requesting that the Town Board consider whether it is feasible to install sidewalks in the area.

8. The granting of this application shall not be deemed to relieve the applicant of the need to obtain approvals or permits from any other board, agency, or officer as prescribed by law or ordinance with regard to the approved plan or construction or any other phase of the project. Further, the granting of this application shall not be deemed to relieve the applicant of the need to comply with any and all other local, state, and federal requirements, including but not limited to compliance with the New York State Uniform Code and any applicable regulations related to the proposed use, location, or construction.

## Page 20

PROCEEDINGS

9. All work shall be in strict compliance with the approved plans and all rules, regulations, and laws and ordinances governing the site plan and construction on the site. In event the Town Consulting Engineer, Superintendent of Highways, and Building Inspector agree that, as a result of conditions in the field, field changes are necessary to complete the work of the site plan, and if, in the opinion of the Town Consulting Engineer and Building Inspector, such field changes are minor and do not have any material negative impact on the overall design of the site plan, traffic circulation, and/or drainage of the site, including but not limited to roads, sewers, and drainage, then the Town Consulting Engineer and Building Inspector may, upon the filing of amended plans which reflect such field changes, allow such changes. In all other circumstances, any deviation from or change in the approved plans shall require application to this Board for amendment of this approval.

10. No work may be commenced on any portion of the site without first contacting the Building Inspector and Town Consulting Engineer to

## Page 21

PROCEEDINGS

ensure that all permits and approvals have been obtained and all permit fees paid and to establish an inspection schedule. Failure to comply with this provision shall result in the immediate revocation of all permits issued by the Town, along with the requirement to reapply (including the payment of application fees) for all such permits, the removal of all work performed, and restoration to its original condition of any portion of the site disturbed and such other additional civil and criminal penalties, as the courts may impose.

11. The property shall be inspected by the Building Inspector, the Town's Consultant Engineer, and any other consultants or professionals deemed necessary or appropriate by the Building Inspector to ensure that all construction, improvements, and modifications were done in accordance with all applicable federal, state, and local laws and regulations and all professional standards and guidelines prior to the field being operational.

12. This application is granted subject to the accuracy of the representations made by the applicant and its representatives to the Planning

**Page 22**

```
1                    PROCEEDINGS
2    Board in its written submissions and during the
3    public hearing, and if any material representation,
4    whether or not it is included in this resolution,
5    is found to be inaccurate, at the discretion of the
6    Planning Board, the applicant shall be required to
7    make an application for an amended approval.
8           13.  This resolution shall be of no force
9    or effect unless and until there is full compliance
10   with all of its requirements and conditions.
11          Dated as of August 10, 2022.
12          THE CHAIRMAN:  Thank you.  Would somebody
13   move on the resolution, please.
14          MR. SAMBRATO:  I will move it.
15          THE CHAIRMAN:  Moved by Mr. Sambrato.
16          MR. GIZZI:  Second.
17          THE CHAIRMAN:  Seconded by Mr. Gizzi.
18          All those in favor, signify by saying
19   aye.
20          MR. GIZZI:  Aye.
21          THE CHAIRMAN:  Aye.  Opposed?
22          MR. WIDMER:  Opposed.
23          MR. MICHALAK:  Opposed.
24          MR. SAMBRATO:  Opposed.
25          THE CHAIRMAN:  We have three opposed, two
```

**Page 23**

```
1                    PROCEEDINGS
2    ayes, so the application is turned down.
3           Next meeting will be on September 14th.
4           Motion to adjourn the meeting.
5           MR. MICHALAK:  I make that motion.
6           THE CHAIRMAN:  Moved by Mr. Michalak.
7           MR. WIDMER:  Second.
8           THE CHAIRMAN:  Second by Mr. Widmer.
9           All those in favor, signify by saying
10   aye.
11          (Whereupon, all of the Board Members
12   responded "Aye.")
13          THE CHAIRMAN:  Meeting adjourned.
14          (Whereupon, the meeting was adjourned.)
15
16
17
18                *    *    *    *    *
```

**Page 24**

```
1
2              C E R T I F I C A T I O N
3
4           Certified to be a true and accurate
5    transcript of the stenographic minutes taken
6    within.
7
8           _____
                Ashley Millan,
9               Senior Court Reporter
10
11   Dated:  August 16, 2022
```

**Page 25**

```
1    Errata Sheet
2
3    NAME OF CASE: In Re: TOWN OF HAVERSTRAW PLANNING BOARD MEETING
4    DATE OF DEPOSITION: 08/10/2022
5    NAME OF WITNESS:
6    Reason Codes:
7       1. To clarify the record.
8       2. To conform to the facts.
9       3. To correct transcription errors.
10   Page _____ Line _____ Reason _____
11   From _____ to _____
12   Page _____ Line _____ Reason _____
13   From _____ to _____
14   Page _____ Line _____ Reason _____
15   From _____ to _____
16   Page _____ Line _____ Reason _____
17   From _____ to _____
18   Page _____ Line _____ Reason _____
19   From _____ to _____
20   Page _____ Line _____ Reason _____
21   From _____ to _____
22   Page _____ Line _____ Reason _____
23   From _____ to _____
```

## "

"RLUIPA 8:23

## (

(1) 16:20
(2) 16:21
(3) 16:23
(a) 15:3
(b) 15:5
(c) 15:7
(d) 15:9

## 0

01 4:12,24
021585 6:2

## 1

1 4:10 5:15,22 6:8 11:20 15:24
1/21/2022 5:16
10 3:4 7:11
100-foot 6:18
100-foot-wide 6:12
11 6:5 7:10,15
12 7:13
13 3:25 7:14,16,18 8:2
137-96(A) 17:4
13th 4:17
15 12:11
1983 6:11

## 2

2 5:22,23,24 12:18 17:2
2/23/2022 6:3
2021 7:10,11

2022 3:4,25 7:13, 14,15,16,18,22 8:2
25.12 4:11,24
27 6:10 12:11

## 3

3 13:21
31 4:12,24

## 4

4 13:24
43 6:8

## 5

5 14:6
5493 6:11

## 6

6 15:2
62 4:11,22
62-lot 6:7

## 7

7:30 3:4

## 8

8 7:15,22

## 9

9 7:13,14

## A

A-100.00 6:3
A-101.00 6:4
A-102.00 6:4
A-200.00 6:4
A-201.00. 6:4

A173-10(d) 17:5
A173-16(b) 17:13
abide 13:8
able 9:16
above-stated 16:21
abuts 11:21
abutted 12:25
abutting 11:25
accepted 6:21
access 8:20
accommodate 10:19
accommodations 15:4
accord 8:25
accordance 17:4, 12
acres 6:8
Act 7:21 8:23
activities 13:12 14:18
activity 12:5
actual 11:3
addition 10:10 13:12 15:18
ADDONA 4:20
adequate 17:11
adopted 7:22 8:4
adoption 3:24
advised 6:24
afforded 15:4
against 11:2
agencies 16:5,9
agency 7:20
all 4:6,7 11:21 14:3 16:3,4,8,14, 20
allegations 10:7
Allegiance 3:7
alleviate 9:20

allowed 10:16 13:25
allowing 14:18
allows 14:3
along 11:24 13:4
already 13:22
also 10:20 12:25 13:18
alternatives 9:8,9
amount 12:15 17:7
ample 7:17 13:18
an 5:2,7 10:2,17, 18 11:10 13:14 14:13 15:18 17:7, 25
analysis 5:18
and/or 14:11
another 10:18
Anthony 3:19
anticipated 10:4
any 9:20,25 11:2 16:4,8,19 17:22,24
Appeals 8:3
applicant 4:25 5:12 12:3,9 13:17 14:13,20 16:3,8, 11,14 17:3,5,13, 18,25
applicant's 7:2 9:21
application 4:21 5:2,14 7:9 9:11,18 10:17,18 14:13 15:6,9,17 16:18 17:25
applying 9:5
approval 5:4 15:18 16:7,19 17:18
Approval/seqra 4:12
approvals 14:11
approvals/ permits 16:8

approve 7:6
approved 15:24 16:10,22,23 17:10, 17
approximately 6:7
April 7:14
Architectural 5:24 17:19
area 6:20 7:2,3 8:5,10 11:24 12:17,20,23 13:4, 9,13,20,23 14:2,19 15:7,10
areas 5:5 7:6 11:18 14:5,8 15:15
around 6:13 13:19
ask 4:19
asked 4:17
at 4:17 7:9,11,12, 21 8:2 12:24
attached 7:24 8:21
attend 7:17
attorney 4:18 17:7
August 3:4 7:10
authorizations 14:11
authorize 15:13
authorizes 7:5 11:17
aye 4:6,8

## B

balanced 11:2
based 11:16 15:16 17:8,14
bearing 11:4
because 10:22 14:9
been 7:3 10:13,15 13:2,7